**Jane S. SHATKIN, as Executrix of the Estate of Lloyd J. Shatkin, Deceased, Plaintiff.**

v.

**McDONNELL DOUGLAS CORPORATION and American Airlines, Inc., Defendants.**

**No. 79 Civ. 3426(MP).**

United States District Court, S.D. New York.

June 13, 1983.

---

F. Lee Bailey and Aaron J. Broder by Stephen Buchalter, Howard Fifer, New York City, for plaintiff.

Haight, Gardner, Poor & Havens by Randal R. Craft, Jr., Peter Hoenig, New York City, for defendant American Airlines, Inc.

Mendes & Mount by Anthony G. Bouscaren, New York City, for defendant McDonnell Douglas Corp.

## DECISION AND ORDER

MILTON POLLACK, District Judge:

Plaintiff has made an offer of the proof taken by question and answer out of the presence of the jury following the qualification of Dr. Edmund Mantell as an economics expert. The witness purported to establish projections to be delivered to the jury concerning the pecuniary injury to plaintiff resulting from the death of her son.

The Court has carefully considered the exhibits and testimony that present Dr. Mantell's opinion and the basis for that opinion.

■ The Court finds that Dr. Mantell's assumptions and techniques of calculation involve egregious and gross error at almost every step. The testimony is not competent, has no evidentiary value and no reasonable juror would be justified in relying on or according any weight to it whatsoever. To permit the jury to hear it would amount to irretrievable prejudicial projections of an unfounded character and hopelessly prejudice the fairness of the trial.

Accordingly, the testimony of Dr. Mantell, other than as already stated to the jury, is excluded.

The following are the most flagrant defects in the assumptions and techniques of analysis employed by Dr. Mantell:

No. 1. The single most improper assumption in support of the alleged expert opinion is the assumption that the decedent would have devoted 20 percent of his disposable income under Hypothesis A or up to 26.8 percent of his disposable income under Hypothesis B to the support of his mother.[1]

There is no evidence in the record to support such an assumption. The only evidence of decedent's financial support of his mother is his transfer to his mother of an annuity created by his father for the dece-

---

1. The difference between Hypotheses A and B is that in A the expert assumes that due to hypothesized support needs of decedent's mother in 1987 and due to decedent's desire to provide a constant percentage of his income to help meet those needs, that decedent would leave his regional employment and obtain employment in a national organization to augment his income to the desired level. In hypothesis B, the decedent is assumed to retain his regional job and contribute a greater share of his earnings. There is no evidence to support the speculations upon which either hypothesis is based.

dent's benefit which was to expire within a period of his life or ten years, whichever was sooner. The annuity was in the amount of $96.01 per month or approximately 6 percent of the decedent's income.

Moreover, even if the air crash had not occurred, the annuity payments would have ceased in 1979. There is no evidence in the record to support an assumption that the decedent would have made up the annuity payments out of his earnings once they were terminated.

Dr. Mantell's opinion is based on an assumed contribution of far greater proportions. In fact, under Hypothesis A, Dr. Mantell assumes that the decedent would have found a job with substantially higher pay in 1987 in order to maintain his mother's standard of living. There is no evidence in the record that the decedent would have transferred from the original occupation that he engaged in to a national enterprise or that he could obtain such a position or that he would have desired to do so.

These assumptions are no more than conjecture and wild speculation. An expert's opinion that is founded in conjecture that is inconsistent with the record has no evidentiary value and must be excluded.

No. 2. Dr. Mantell tries to support his choice of a 20 percent contribution by stating a head of a household of modest income spends approximately 20 percent of his disposable income on himself. The decedent's projected income was far from modest and the percentage of his disposable income that he would spend on himself does not at all indicate what he would have spent on his mother.

In all events, the decedent's actions prior to his death belie the assumptions made by Dr. Mantell on this score.

The colloquy between plaintiff's counsel and Dr. Mantell at the conclusion of the testimonial offer of proof not only illustrates that the testimony has no evidentiary value, but also shows the complexity of the proffered testimony would unalterably tend to mask its inherent errors and mislead the jury. In an attempt to show that the

projected contributions were reasonable given the mother's projected needs, Dr. Mantell compared his estimate of her undiscounted projected consumption, that is, her total expenditures in 1992 ($53,676) with the discounted value of the proposed contribution award ($9,937) for the year 1992.

Of course, if plaintiff received an award of $9,937 today, it would generate substantial interest by 1992 and would, therefore, yield a much larger share of the $53,676 that Dr. Mantell assumes would be spent by plaintiff on expenditures on goods and services. The fact that such testimony could apparently mislead an experienced trial lawyer proves that it is instinct with high prejudice of the jury.

The Court is aware that Federal Rule of Evidence 703 allows an expert to base his opinion on data of a type reasonably relied upon by experts in his particular field even where the underlying data is not admissible in evidence.

Rule 703 does not, however, allow an expert to base his opinion on assumptions and data that are so contrary to the evidence in the record or on assumptions that are so speculative that they amount to gross conjecture and nothing more.

■ The Court also has a duty to inquire into the trustworthiness of the underlying data and can exclude testimony where an expert has not reasonably based his opinion on trustworthy underpinnings.

*See Zenith Radio Corp. v. Matsushita Electric Industries Company,* 505 F.Supp. 1313, 1325 (E.D.Pa.1981).

■ Indeed, the Court's determination whether an expert is truly qualified for the circumstances of the particular case can take into account the fact that his opinion is based on self-evident untrustworthy underpinnings. *Id.* at 1325 & n. 11.

No. 3. Dr. Mantell assumes that the decedent's base earnings would have increased by 7.89 percent per year from 1979 until 1998. This rate of increase is based on the average rate of price inflation in the decedent's industry between 1971 and 1982. The proper calculation would be based on

wage inflation, not price inflation. Moreover, there is no reason to assume that the high inflation in the 1970's will characterize the 1980s and 1990s. Recent experience is to the contrary.

No. 4. In calculating the decedent's expected disposable income, Dr. Mantell completely ignores New York State taxes and assumes that a constant federal tax rate of 11.7 percent would be applied to decedent's income until 1998, despite the fact that he projects that decedent's income would be $151,990 in 1990 under Hypothesis A and $117,700 in 1990 under Hypothesis B. Thus, Dr. Mantell implicitly assumes that the federal income tax brackets will be continuously restructured to reduce the effective tax rate downwards over the next 20 years. There is no support in the record or anywhere else for such an assumption.

No. 5. In contrast to the 11.7 percent tax rate assumed for the decedent with his steadily rising income, Dr. Mantell has assumed that the plaintiff would be subject to income taxes at the rate of 23 percent on any income generated by the investment of any award she might receive.

Thus, the expert opinion is based in part on the application of a higher tax rate to the plaintiff than to the decedent despite the fact that the decedent was projected to earn far more than the plaintiff.

No. 6. The purported calculations of the present discounted value of any award that the plaintiff might receive further demonstrates the lack of evidentiary value in the opinion. Dr. Mantell assumes an 8 percent discount rate to be applied constantly until 1998. Since he assumed a 7.89 percent inflation rate he is, therefore, assuming that the real rate of interest in the United States will be 0.11 percent for the remainder of the century.

He then further reduces this estimate to account for the taxes that plaintiff will have to pay on interest income she earned on the proceeds of the award.

Thus, the expert opinion is based on the assumption that the real after-tax rate of return on investments will be negative for the remainder of the century. Obviously there is no support for such an assumption in the record of this case. Indeed, calculations of this sort lead the Court to question whether the preparation of this testimony by an individual with educational credentials of high caliber was in good faith.

An expert may not rely principally on inconsistent assumptions that are biased toward the party for whom the expert testifies. The tax rate assumptions are one example of such blatantly contradictory assumptions.

See, e.g., Dallas & Mavis Forwarding Co. v. Stegall, 659 F.2d 721 (6th Cir.1981) affirming the district court's exclusion of an expert's report as the report relied on a biased eyewitness report which would have been given undeserved authority if stated by the expert.

Such inconsistent assumptions are exampled by what was done under paragraph 6 above.

In addition, the Court relies on Rule 403 of the Federal Rules of Evidence as a basis for the exclusion of the testimony. This rule requires the Court to balance the probative value of the evidence with the dangers of unfair prejudice, confusion of the issues and the tendency of the testimony to mislead the jury.

If the probative value is substantially outweighed by these dangers, the evidence should be excluded. In this case, for the reasons stated above, the testimony has no probative value.

Given all the facts and circumstances of this case, the testimony would seriously prejudice, mislead and confuse the jury, therefore, it is properly excluded. See, e.g., United States v. Anderson, 584 F.2d 849 (6th Cir.1978).

SO ORDERED.