**John BOUCHER, Plaintiff–Appellee,**

v.

**U.S. SUZUKI MOTOR CORP., Defendant,**

v.

**AMERICAN HONDA MOTOR CO.
INC., Defendant–Appellant.**

**No. 1530, Docket 94–9050.**

United States Court of Appeals,
Second Circuit.

Argued May 22, 1995.

Decided Jan. 2, 1996.

L. Michael Mackey, Feeny, Centi & Mackey, Albany, NY, for Plaintiff–Appellee John Boucher.

Eric A. Portuguese, Albany, NY (Robert S. Bruschini, Thron & Gerson, on the brief), for Defendant–Appellant American Honda Motor Company.

Before: VAN GRAAFEILAND, KEARSE and JACOBS, Circuit Judges.[1]

PER CURIAM:

Defendant American Honda Motor Company ("Honda") appeals from a judgment entered in the United States District Court for the Northern District of New York following a jury trial before Neal P. McCurn, *Judge*, awarding plaintiff John Boucher $366,890.06 in personal injury damages. On appeal, Honda challenges the jury's award of $180,000 for past and future lost earnings, contending that there was no foundation for the testimony of a vocational expert as to such earnings.

For the reasons set forth below, we vacate that part of the judgment awarding past and future lost earnings, and remand to the district court for further proceedings on the issue of lost earnings consistent with this opinion.

## BACKGROUND

On June 11, 1988, John Boucher was injured when a metal motorcycle crate frame weighing between forty and eighty pounds fell on his left arm as he was heaving it from his employer's truck at a municipal dump. The frame had been used by defendants Honda and U.S. Suzuki Motor Corporation to ship motorcycles to Boucher's employer, third-party defendant Herba Motor Co., Inc. On January 11, 1991, Boucher filed an action in the United States District Court for the Northern District of New York against Honda and U.S. Suzuki Motor Corporation based on theories of negligence, breach of warranty and strict products liability.[1] The complaint alleged that the accident occurred because the frame was defective and broke while he was lifting it. A jury trial was held from September 1 to September 13, 1994, before Judge McCurn.

At trial, Boucher testified that prior to his accident he had a sporadic work history. From approximately age 16 to 27 he was seasonally employed in a leather factory. As he stated at trial, that work "wasn't anything real steady, you have work for a month and then you might have a month off." His income fluctuated from year to year: he earned $10,393 in 1983, $5,800 in 1984, $4,600 in 1985, and $7,800 in 1986. In 1987, Boucher began working for Herba Motor Co., where he was employed as a full-time junior motorcycle mechanic at the time of the accident. When he began working at Herba, he earned $5 per hour. The work was seasonal, and he worked 13 weeks in 1987 before being laid off. He did not work again for eight months. In March 1988, Boucher was called back to work and worked 15 weeks until the accident in June 1988. At the time of the accident, Boucher (then age 29) earned $6 an hour plus overtime, or approximately $280 per week.

After his injury, Boucher was completely disabled for about eight months. In March 1989, Boucher worked for several weeks as a roofer, but could not do the required heavy lifting to remain in that job. From 1989 to 1993, he worked on and off for an asbestos abatement firm. At the time of trial, Boucher was working as a free-lance painter and carpenter.

Over Honda's objections, the district court permitted Dr. Kenneth Reagles, who holds a Ph.D. in Rehabilitation Counseling Psychology, to testify regarding Boucher's lost earnings capacity. Dr. Reagles testified that Boucher's injury prevents him from working in jobs that require more than "medium" levels of physical exertion. He estimated that Boucher's earning capacity at the time of the accident was at least $6 per hour, plus fringe benefits equal to approximately 19% of his earnings, and that (based on Department of Labor statistics) Boucher had an expected work-life of 24.644 years prior to his injury. Based on assumptions that Boucher would have worked 40 hours per week for 52 weeks per year, and would have received a 4% per annum increase in pay to account for infla-

---

1. Suzuki impleaded Herba as a third-party defendant. During the trial, defendant Suzuki settled with Boucher for $25,000, at which time both Suzuki and Herba dropped out of this case. Boucher's suit had been brought against both Suzuki and American Honda because they used identical shipping frames and it was impossible to determine which company's frame was involved in the accident.

tion, Dr. Reagles estimated that Boucher's pre-disability future earnings capacity over his expected work life was $463,480.[2] Dr. Reagles then estimated that Boucher's post-injury future earnings capacity as a painter was $8 per hour, with no fringe benefits, and that his expected work-life was reduced to 20 years as a result of the injury. Based on assumptions that Boucher will work 40 hours per week for 52 weeks per year (but receive no wage increases to account for inflation), Dr. Reagles estimated that Boucher's post-injury future earnings capacity over the course of his expected work-life was $332,800. Dr. Reagles concluded that Boucher's net loss of future earnings capacity as a result of his accident was $130,680—the difference between his pre-injury earnings capacity and his earnings capacity post-injury.

Using a similar methodology, Dr. Reagles estimated that Boucher's lost earnings prior to the trial were $27,883. In arriving at this figure, Dr. Reagles again assumed that Boucher would have worked full-time and would have received benefits equal to 19% of his earnings from the date of injury to the time of trial. Dr. Reagles testified that both of his projections were "conservative."

On September 13, 1994, the jury returned a verdict in favor of Boucher and awarded him $30,000 for lost past earnings and $150,000 for lost future earnings capacity.[3] On October 11, 1994, Honda filed timely notice of appeal.

## DISCUSSION

On appeal, Honda does not contest liability, but argues that the district court abused its discretion in permitting Dr. Reagles to testify based on speculative assumptions that were unsupported by record evidence. Specifically, Honda contends that (a) the assumption that Boucher would have been employed full-time was speculative; (b) there

was no evidence in the record that Boucher had ever received fringe benefits; and (c) there was insufficient proof that Boucher will have a shortened work-life as a result of his injury. We will address each of these grounds separately.

### A. *Full Time Employment.*

It is well-established that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *see also* Fed.R.Evid. 702. Although expert testimony should be excluded if it is speculative or conjectural, *see In re Air Disaster at Lockerbie Scotland,* 37 F.3d 804, 824 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995), or if it is based on assumptions that are "so unrealistic and contradictory as to suggest bad faith" or to be in essence an "apples and oranges comparison," *Shatkin v. McDonnell Douglas Corp.,* 727 F.2d 202, 208 (2d Cir.1984) (internal quotation marks omitted), other contentions that the assumptions are unfounded "go to the weight, not the admissibility, of the testimony." *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1188 (2d Cir.), *cert. denied,* 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A district court has discretion under Federal Rule of Evidence 703 "to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Shatkin,* 727 F.2d at 208.

Where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects. *See Gumbs v. Int'l Harvester, Inc.* 718 F.2d 88, 98 (3d Cir.1983) (expert testimony based on assumption that

---

**2.** The expert's arithmetic seems to be inaccurate, but that is not a matter we need to consider. We assume that the perceived inaccuracy results from the expert's inflation of Boucher's wages by 4% per annum, and inclusion of an indeterminate sum representing the value of his fringe benefits.

**3.** Boucher's total award was $366,890.06. The jury awarded $11,890.06 in medical expenses, $30,000 for pre-trial lost past earnings, $150,000 for future lost earnings capacity, $100,000 for pain and suffering prior to trial and $100,000 for future pain and suffering. The total jury verdict of $391,890.06 was then reduced by $25,000—the amount that Boucher received from Suzuki in satisfaction of his claims against it.

plaintiff would have earned twice his average annual income should have been excluded); *see also Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 567–69 (D.C.Cir.1993) (expert testimony should have been excluded where it was based on speculative assumptions that decedent would have earned income from consulting, based on one apparently uncompensated instance; and that decedent's real estate would have increased in value from $60,000 to $4.8 million); *Hernandez v. M/V Rajaan,* 841 F.2d 582, 587 (5th Cir.) (expert testimony based on assumption that part-time longshoreman would achieve full-time status should have been excluded), *cert. denied,* 488 U.S. 981, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988); *In re Air Crash Disaster at New Orleans, Louisiana,* 795 F.2d 1230, 1234 (5th Cir.1986) (expert testimony based on unsupported assumption that decedent's wages would have grown 8% annually should have been excluded). Admission of expert testimony based on speculative assumptions is an abuse of discretion. *See Gumbs,* 718 F.2d at 98–99.

▮ In the present case, Dr. Reagles estimated Boucher's lost earnings based on the assumptions (among others) that Boucher would work 40 hours per week, 52 weeks per year, with fringe benefits and regular pay increases, for the rest of his career. Prior to the accident, however, Boucher's sporadic employment had yielded fluctuating low levels of income, with long spells of no income whatsoever. When he was employed, he received few fringe benefits, if any.

The expert's projection thus was based on assumptions about Boucher's employment prospects that represent a complete break with his work history of seasonal and intermittent employment. We cannot say whether Boucher's employment pattern was attributable to low demand for his services, to want of ambition, skills or application, or to bad luck or other causes. In any event, nothing of probative value—such as a change in family responsibilities, or the acquisition of a new set of skills—accounts for the reversal assumed by the expert. True, Boucher had been employed full-time for 15 straight weeks at the time of the accident, had recently received a $1.00 per hour raise, and had

completed a motorcycle maintenance course. But this does not support an assumption that his employment prospects had undergone any fundamental change, or that his employment with Herba would no longer be seasonal (as it was in the past), and it certainly cannot support an inference that, at the time he was injured, Boucher was on the verge of a twenty-four year career of clock-punching.

On appeal, Boucher contends that his prospect for full-time employment was a factual matter for the jury to determine, not a ground for exclusion of Dr. Reagles' estimate of his future earning capacity. But the Federal Rules of Evidence require a greater degree of discrimination than that. *See Joy,* 999 F.2d at 569 ("[I]n view of the patent flaws in [the expert's] testimony, we must resist 'the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it the weight it deserves.'") (quoting *Air Crash Disaster at New Orleans,* 795 F.2d at 1233) (internal quotation marks omitted). Since Boucher's expert testimony was not "accompanied by a sufficient factual foundation before it [was] submitted to the jury," *Gumbs,* 718 F.2d at 98, it was inadmissible under Federal Rule of Evidence 702. We hold therefore that the district court abused its discretion in permitting Dr. Reagles to testify regarding Boucher's past and future lost earnings capacity based on the unrealistic and speculative assumption that Boucher would have been employed on a permanent, full-time basis, year in and year out, had he not been injured.

### B. *Fringe Benefits.*

▮ Dr. Reagles also based his projections on the unsupported assumption that Boucher received fringe benefits equal to approximately 19% of his earnings while employed at Herba. No testimony or documentary evidence was offered at trial showing that Boucher received benefits of any kind from Herba in 1987 or 1988, or from his jobs at the leather mills in prior years. Dr. Reagles' projections, therefore, were without factual basis, and should not have been admitted. *See Gumbs,* 718 F.2d at 98 ("calculation of fringe benefits loss was not accompanied by

evidence that plaintiff ever received fringe benefits" and therefore should have been excluded). *Cf. Sales v. Republic of Uganda*, 828 F.Supp. 1032, 1042 (S.D.N.Y.1993) (court reduced projected earnings loss by estimated loss of fringe benefits, where "plaintiff has not offered a basis for including an additional 20% representing lost fringe benefits").

C. *Work–Life Expectancy.*

■ It was not an abuse of discretion for the district court to admit Dr. Reagles' testimony regarding Boucher's pre and post-injury work-life expectancy. Dr. Reagles' testimony with respect to this issue was based on widely accepted work-life tables published by the Department of Labor and his expertise in vocational rehabilitation. *See Earl v. Bouchard Transp. Co.*, 735 F.Supp. 1167, 1175 (E.D.N.Y.) ("Statistical charts, such as the mortality tables and the work-life expectancy tables prepared by the United States Department of Labor ... are often deemed authoritative...."), *aff'd in part, rev'd in part on other grounds*, 917 F.2d 1320 (2d Cir.1990). At trial, a foundation was laid for Dr. Reagles' testimony that explained the statistical assumptions underlying the work-life tables and Dr. Reagles' projections. Since this testimony was based on a properly laid foundation and was not speculative, it was within the district court's discretion to admit it.

### CONCLUSION

The judgment for John Boucher is vacated to the extent of past and future lost earnings, or $180,000, and this case is remanded to the district court for a determination as to past and future lost earnings consistent with this opinion. The jury having been properly instructed and having answered special interrogatories directed precisely to the issue in question, a partial new trial limited to the issues of past and future lost earnings is just and appropriate because it clearly appears that those issues are sufficiently "distinct and separable from the others that a trial of [those issues] alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513,

515, 75 L.Ed. 1188 (1931); *see also Crockett v. Long Island R.R.*, 65 F.3d 274, 278–79 (2d Cir.1995); *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740, 756 (2d Cir.1984).