16-1995-cv
*Scienton Techs., Inc. v. Computer Assocs. Int'l, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of July, two thousand seventeen.

Present:
> JOHN M. WALKER, JR.,
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> *Circuit Judges*,

_____

SCIENTON TECHNOLOGIES, INC.,

> *Plaintiff-Appellant,*

> v.                                             16-1995-cv

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

> *Defendant-Appellee.*[*]

_____

| | |
|---|---|
| For Plaintiff-Appellant: | ROBERT D. MACGILL (Jessica M. Lindemann, Alexander P. Orlowski, *on the brief*), Barnes & Thornburg LLP, Indianapolis, Indiana |
| For Defendant-Appellee: | MICHAEL D. SCHISSEL, Arnold & Porter Kaye Scholer LLP, New York, New York |

_____

[*] The Clerk of Court is respectfully instructed to amend the caption to conform to the above.

1

Kevin P. Mulry, Farrell Fritz, P.C., Uniondale, New York

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED** in part, and **AFFIRMED** in part, and the case is **REMANDED** for further proceedings.

Plaintiff-Appellant Scienton Technologies, Inc. ("Scienton") appeals from the May 26, 2016 judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*), entered after a jury trial. On appeal, Scienton challenges the district court's dismissal for lack of subject matter jurisdiction, as well as other rulings incorporated in the judgment. We reverse as to subject matter jurisdiction, but otherwise affirm the district court. Assuming the parties' familiarity with the facts, the procedural history, and the issues on appeal, we elaborate only as necessary to explain our decision.

## I. Background[1]

The Plaintiffs below—Scienton, NI Group, Inc. ("NI Group"), and Secure-IT, Inc. ("Secure-IT")—are three related technology companies. In June 2000, Secure-IT merged into NI Group. According to principals of both NI Group and Scienton, in late November 2000, NI Group transferred at least some components of its business to Scienton through an oral agreement that the parties memorialized in a written contract nearly four years later.

The instant litigation arose out of events beginning in August 2000, when Predrag Zivic—a co-founder of Secure-IT and an officer of NI Group—entered discussions with Defendant-Appellee Computer Associates International, Inc. ("CA"), a software company, about

---

[1] Unless otherwise indicated, the facts below are gleaned from undisputed evidence presented at trial.

partnering to develop a software security solution involving CA's products. Zivic's proposal, originally referred to as the Information Security Model, and later as the Enterprise Security Solution ("ESS"), was a new security program that would collect, analyze, manage, and depict physical and digital security data in real time. Shortly after Zivic's initial communications with CA, on September 20, 2000, NI Group and CA entered into a Mutual Nondisclosure Agreement ("MNDA"), under which CA would furnish NI Group with some of CA's existing software to facilitate the development of the proposed security solution.

Although the MNDA was between CA and NI Group, testimony at trial established that NI Group's (at least partial) successor, Scienton, contributed to the development of the security solution. According to Zivic's trial testimony, Scienton worked with CA on the solution from October 2000 until June 2001. Zivic testified that during this period, Scienton updated CA on the progress of development through monthly calls and documents shared through a secure website. In the summer of 2001, however, CA terminated the relationship and asked NI Group to return its software. After seeking advice from legal counsel, Zivic returned CA's software and destroyed work product related to the solution.

In 2002, CA announced the upcoming release of a product with similar properties to the ESS. The two CA products at issue in this litigation, eTrust Security Command Center ("SCC") and eTrust 20/20 ("20/20"), became commercially available in 2003. SCC is security information management software that collects and displays data from other software; 20/20 also gathers information from various sources, but uses CA's three-dimensional visualization software to display it.

In June 2004, Secure-IT, NI Group, and Scienton filed this lawsuit against CA asserting various claims based principally on the theory that CA had used their idea without paying for it.

After nearly a decade, the case proceeded to trial. Before and during trial, the parties disagreed about which of the Plaintiffs could pursue tort claims based on the alleged theft, and the Plaintiffs argued in favor of Scienton. The district court did not rule on the issue but, accepting what it considered to be the Plaintiffs' choice, dismissed Secure-IT and NI Group from the case. The jury returned a verdict finding CA liable, under New York law, for the torts of misappropriation of an idea and unfair competition, and awarding damages of $956,000 in total. After trial, the district court granted CA's renewed motion for judgment as a matter of law, holding that Scienton had failed to meet its burden to establish its standing to pursue the tort claims. Dismissing for lack of subject matter jurisdiction, the district court also dismissed as moot Scienton's pending motion for a new trial on damages. Scienton timely appealed the district court's judgment and various orders incorporated therein.

## II.   Discussion

On appeal, Scienton advances four main arguments. We agree with the first, that Scienton had standing to pursue the tort claims, and so we reverse the judgment dismissing the case for lack of subject matter jurisdiction. We are otherwise unpersuaded by Scienton's contentions, and therefore affirm both the dismissal of Scienton's claim for breach of the MNDA and the rulings excluding some of the evidence Scienton sought to present in support of its damages case. Finally, we decline to rule, in the first instance, on Scienton's new-trial motion.

### A.  Standing

Scienton challenges the district court's post-trial determination that Scienton lacked standing to bring the tort claims. On appeal from a dismissal due to lack of standing, we review a district court's legal conclusions de novo, and its factual findings for clear error. *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 45 (2d Cir. 2015). A plaintiff has the

4

burden of proving standing, and must show it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Here, the district court held that Scienton had not established the first requirement, and concluded, as an initial matter, that "NI Group—not Scienton——suffered an injury in fact because NI Group was the plaintiff that conveyed the Idea to CA." *Scienton Techs., Inc. v. Computer Assocs. Int'l, Inc.*, No. 04-cv-2652-JS-ARL, 2016 WL 2888996, at *5 (E.D.N.Y. May 17, 2016). We disagree. The district court's conclusion conflicts with the evidence presented at trial and the jury's verdict, which together establish that Scienton contributed to and conveyed the misappropriated idea to CA, and therefore that Scienton suffered an injury in its own right.

At trial, Zivic, who was an officer of both NI Group and Scienton, testified about *Scienton's* work developing the ESS and *Scienton's* communication about the in-progress solution with CA. The document presented to the jury as summarizing the allegedly misappropriated idea (the Plaintiffs' Second Supplemental Trade Secret Disclosures) describes the idea as created during the relationship between the Plaintiffs and CA and as developed and conveyed to CA by Scienton. During his summation, arguing that the allegedly misappropriated idea satisfied the concreteness element of a misappropriation claim, Plaintiffs' counsel explained, as the evidence showed, that the idea was not complete and operational until May or June 2001—long after Scienton became involved in the project. Ultimately, the verdict form asked the jury to find CA liable for misappropriation of the idea described in the Plaintiffs' Second Supplemental Trade Secret Disclosures. In light of the trial evidence and verdict in Scienton's favor, the district court clearly erred by concluding that "[a]s an initial point, NI Group—not Scienton——suffered an injury in fact because NI Group was the plaintiff that

5

conveyed the Idea to CA," *Scienton Techs., Inc.*, 2016 WL 2888996 at *5. Essentially, the jury found otherwise. Accordingly, we reverse the district court's judgment dismissing the case for lack of subject matter jurisdiction.[2]

## B. Breach of contract

Scienton next challenges the district court's grant, at the close of evidence, of judgment as a matter of law to CA on the claim for breach of the MNDA due to Scienton's failure to adduce evidence of compensatory damages. In Scienton's view, the jury should have been permitted to consider awarding it CA's ill-gotten profits from sales of SCC and 20/20 as damages for breach of the MNDA.

We review de novo a district court's grant or denial of a motion for judgment as a matter of law. *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016). Under New York law, which the parties appear to agree applies to the MNDA, "[i]t has long been recognized that the theory underlying damages for breach of contract is to make good or replace the loss caused by the breach." *Seidman v. Indus. Recycling Props., Inc.*, 967 N.Y.S.2d 77, 79 (2d Dep't 2013). This Court has observed that, "[w]hile on occasion the defendant's profits are used as the measure of damages" for breach of contract, "this generally occurs when those profits tend to define the plaintiff's loss." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 696 (2d Cir. 1991).

---

[2] Because we conclude that the district court erred in concluding that Scienton suffered no injury in fact, we need not reach Scienton's other contentions on appeal, namely that (1) Scienton had assignee standing because it acquired the tort claims under the Agreement of Sale between NI Group and Scienton, and (2) in any event, and in light of the fact that both NI Group and Scienton were parties to the case from its inception (indeed, until mid-trial), CA's objection to Scienton's standing was actually a real-party-in-interest objection, governed by Federal Rule of Civil Procedure 17, which was waived and which the district court, if it agreed with CA, should have permitted the Plaintiffs to correct.

Here, Scienton argues not that CA's ill-gotten profits amount to their losses for any breach of the MNDA, but instead that ill-gotten profits are an appropriate alternative remedy. This argument is unavailing. Scienton fails to cite any New York case allowing a plaintiff to recover a defendant's ill-gotten profits as an alternative to traditional remedies for breach of a contract. Even assuming such a remedy is available under New York law, Scienton fails to establish that it would be appropriate here. Scienton relies on the Restatement (Third) of Restitution and Unjust Enrichment, which allows for disgorgement of profits gained by opportunistic breach where "the available damage remedy affords inadequate protection to the promisee's contractual entitlement." *Id.* § 39(1) (2011). But Scienton's only argument for the inadequacy of traditional contract damages—that the MNDA does not address damages for breach—was raised only in its reply brief, and is unpersuasive besides. We are skeptical of Scienton's assertion that "there are no traditional, expectation damages to award for CA's deliberate breach," Reply Br. at 16, because Zivic testified at trial that what he anticipated from the relationship was that "CA would use our product and sell it as [its] own product and pay [a] percentage of revenue to Scienton," Suppl. App'x 48. More fundamentally, how to calculate traditional contract damages is a distinct question from whether traditional contract damages are adequate redress.

Scienton's reliance on *Kansas v. Nebraska*, 135 S. Ct. 1042 (2015), is similarly misplaced. In that case, the Supreme Court required Nebraska, in addition to paying compensatory damages, to disgorge some of its profits from drawing more than its allotment of water under an interstate compact. *Id.* at 1051, 1057–58. The Court's decision emphasized the scarcity of the natural resource and the inadequacy of actual damages to deter breach. *Id.* at 1057 (noting that because the misappropriated water was so much more valuable on Nebraskan

7

farmland, Nebraska could take more than its share, "pay Kansas actual damages, and still come out ahead"). *Kansas v. Nebraska* suggests disgorgement of profits may, under some circumstances, be part of an appropriate remedy for breach of contract. Scienton has not, however, explained—and we do not see—why its ordinary breach of contract claim, involving a standard nondisclosure agreement, presents such a circumstance. We therefore affirm the district court's judgment in this respect.[3]

## C. Evidentiary rulings

Scienton next challenges the district court's exclusion of evidence it sought to present in support of its damages case. We review for abuse of discretion a district court's admission or exclusion of evidence (including expert testimony), leaving evidentiary rulings undisturbed unless they are manifestly erroneous and justice requires reversal. *Davis v. Velez*, 797 F.3d 192, 201 (2d Cir. 2015); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264–65 (2d Cir. 2002); *see also* Fed. R. Civ. P. 61.

First, as to evidence related to a patent and patent application for 20/20, we find no abuse of discretion in the district court's refusal to allow this evidence, which, if admitted, may have confused the jury—particularly because, due to the posture of the case and the district court's previous rulings, the evidence would have been presented without the benefit of expert testimony. Second, as to certain expert testimony about the Plaintiffs' entitlement to damages for sales of separate CA products integrated into SCC and 20/20, the district court concluded there was no evidence underlying the expert opinion other than a separate, previously excluded, expert report. We cannot say the district court abused its discretion by excluding evidence it

---

[3] Because we affirm the district court's dismissal of Scienton's claim for breach of the MNDA, we need and do not reach Scienton's (dubious) argument that if the dismissal was error, we should enter judgment in Scienton's favor on the breach of contract claim rather than remand for trial.

8

deemed entirely unfounded. *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (per curiam). We therefore affirm the district court's rulings.

### D. Motion for a new trial on damages

Finally, highlighting the district court's failure to issue a conditional ruling on its motion for a new trial on the issue of damages, as required by Federal Rule of Civil Procedure 50(c)(1), Scienton asks this Court to decide the motion in the first instance. We refuse this invitation. Scienton has preserved the claim that it is entitled to a new trial based on the theory that the damages verdict here is against the weight of the evidence. Ordinarily, however, the denial of such a motion is wholly within the district court's discretion. *See Dailey v. Societe Generale*, 108 F.3d 451, 458 (2d Cir. 1997) ("[W]here a district court denies a motion for a new trial made on the ground that the verdict was against the weight of the evidence, such a ruling is not reviewable on appeal. This rule applies . . . to weight-of-the-evidence motions challenging the size of a verdict . . . ." (citation omitted)). Discerning no reason to intrude where our review might otherwise be foreclosed, we remand for the district court's disposition, in the first instance, of Scienton's new-trial motion.

* * *

We have considered Scienton's remaining arguments and find they do not alter our conclusions. Accordingly, we **REVERSE** the district court's judgment dismissing the case for lack of subject matter jurisdiction, **AFFIRM** the district court's judgment in the other respects discussed, and **REMAND** for consideration of the motion for a new trial on damages.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9