In the Matter of NOVA BIOMEDICAL CORPORATION, Plaintiff,

v.

i–STAT CORPORATION, Defendant.

No. 95–11396–RGS.
Misc. No. 8-85.

United States District Court,
S.D. New York.

Sept. 17, 1998.

Hale & Dorr, Sullivan Weinstein & McQuay, Boston, MA, for Nova Biomedical Corporation.

William House, P.C., Walker LLP, New York City, for Evan Sturza and Taurus Littrow Publishing.

Paul, Hastings, Janofsky & Walker LLP, New York City, for i-STAT Corporation.

## MEMORANDUM DECISION AND ORDER

PARKER, Jr., District Judge.

Nova Biomedical Corporation ("Nova") commenced this action in June 1995 in the District of Massachusetts. *Nova Biomedical Corp. v. i-STAT Corp.*, D. Mass. Index No. 95–11396–RGS. Nova claimed patent infringement by i-STAT Corporation ("i-STAT"), a new entrant into Nova's product

market. i-STAT denied Nova's claims of patent infringement and counterclaimed, asserting patent misuse/antitrust monopolization claims under Section 2 of the Sherman Act based on Nova's assertion of an allegedly meritless patent infringement suit.

Currently before this Court are i-STAT's objections to Chief Magistrate Judge Dolinger's April 2, 1998 Order granting the motion of third party Evan Sturza to quash the second set of subpoenas directed to Sturza and his corporate entity, Taurus Littrow Publishing, Inc., and denying i-STAT's cross-motion to compel and for an order of contempt. Sturza and Taurus Littrow Publishing, Inc. seek fees and expenses for opposing i-STAT's objections.

## BACKGROUND

On August 29, 1997, Evan Sturza, a non-party witness, was scheduled to be deposed concerning information that he and his company had about i-STAT. When Sturza failed to appear, i-STAT moved in this Court by Order to Show Cause for the issuance of an Order of Contempt. i-STAT sought sanctions against Sturza for refusing to comply with subpoenas seeking testimony and document production in connection with i-STAT's counterclaims. i-STAT contended that Sturza had been provided with "advance information" of the patent infringement suit through a fax from Nova that allowed Sturza and his clients to trade ahead of public knowledge of the Nova lawsuit, and that Sturza had disseminated information to Dan Dorfman, a public analyst, who thereafter criticized i-STAT. Following a September 4, 1997 hearing at which Sturza appeared *pro se*, this Court ordered Sturza to appear for his deposition and to produce the documents requested.

Sturza appeared *pro se* for his deposition on September 8, 1997, and brought with him a number of documents responsive to i-STAT's subpoenas. When Sturza refused to answer many questions due to a claimed inability to recollect the information sought, i-STAT adjourned the deposition, made a second motion for contempt, and sought appointment of a Special Master to supervise the remainder of the deposition. This Court referred i-STAT's application to Chief Magistrate Judge Michael A. Dolinger.

On September 19, 1997, Nova and i-STAT appeared before Magistrate Judge Dolinger. Sturza also appeared and was represented by Neil Brickman, Esq. The Magistrate ordered a resumption of Sturza's deposition, found relevant questioning into who had received Sturza's analysis on i-STAT, and advised the parties that he would hold the matter of i-STAT's request for fees and expenses in abeyance until the completion of Sturza's deposition.

During the period between the September 19 hearing and Sturza's resumed deposition, counsel for i-STAT concluded that additional documents were required. When Sturza refused to voluntarily produce the documents, counsel made numerous attempts to serve Sturza with a second set of subpoenas, intending to hold only one deposition once all the documents had been received. i-STAT, however, was unable to serve Sturza until the deposition resumed.

On February 18, 1998, Sturza appeared for his deposition. During the deposition (at which Sturza was represented by new counsel, William House, Esq.), Sturza answered most of the questions posed, but again did not answer certain questions to the satisfaction of i-STAT's attorneys. At the close of the deposition, counsel for i-STAT served Sturza with two new subpoenas for production and authentication of documents, one for Sturza himself, and one for his company, Taurus Littrow Publishing. Both subpoenas were returnable March 16, 1998.

Sturza and Taurus moved to quash the subpoenas. The motion to quash was served on Saturday evening, March 14, 1998 by facsimile and by hand upon counsel for i-STAT, and by facsimile and overnight mail upon counsel for Nova. i-STAT cross-moved to compel and for a finding of contempt against Sturza and Taurus.

On April 2, 1998, the Magistrate heard oral argument on the motions. Following his review of the papers submitted on the motions, the second subpoenas, and oral argument, he quashed the subpoenas, denied i-STAT's request for fees and expenses, and denied sanc-

tions. The Magistrate gave two reasons for his decision: first, i-STAT had not demonstrated its entitlement to the additional documents requested in the second subpoenas because the new subpoenas "traverse[d] the same ground" as the original subpoenas except they sought "information going back to the beginning of 1992 and continuing to the present"; and second, i-STAT was not justified in serving a second subpoena to obtain documents from a non-party witness who had previously complied with a prior subpoena for documents and testimony.

i–STAT's two sets of subpoenas differ in a few ways. Significantly, the initial subpoenas request certain documents beginning June 1, *1994* while the second set of subpoenas requests documents beginning January 1, *1992*. There are other differences as well. For example, the first request in the second subpoenas seeks Sturza's "sources of information" regarding i-STAT, and is a new request stemming from Sturza's alleged vagueness at his deposition. i-STAT contends that it requires Sturza's sources of information to determine the substance and extent of Nova's connection with Sturza. As Sturza points out, however, this request is encompassed by the eighth and ninth requests of the original subpoenas, which request "[a]ll files, research memos, recommendations, analyses, and other documents" relating to i-STAT, and its competitors.

The fifth, seventh, eighth, ninth, tenth and eleventh requests in the second subpoenas are also new, requesting information about Sturza's customers, including "all documents reflecting the identities of individuals or entities who received any report made or communicated by you about i-STAT in calendar year 1995," "copies of all communications with Feshbach Brothers or Stockbridge Partners or any individual associated with either entity relating to i-STAT or Nova during the year 1995," "copies of all customer lists as of June or July 1995" reflecting identities of persons receiving Sturza's research, and "a printout of the entirety of the Rolodex on the personal computer as referred to in the deposition testimony." i-STAT contends that these requests result from Sturza's lack of recall at his deposition as to the recipients of

his analyses and his relationships with certain entities. i-STAT does not indicate, however, why, with the exception of the request for the Rolodex, these documents could not have been requested in the original subpoenas.

Otherwise, the first and second set of subpoenas are similar. For example, the second request of the second subpoenas corresponds with the first request from the original subpoenas. The original subpoenas request:

All documents which constitute, refer, reflect or relate to the dates and contents of all written or oral communications during the period June 1, 1994 through date of your response hereto, either A. with John Wallace of Nova Biomedical Corp.; or B. with any other agent, attorney, employee or representative of Nova Biomedical Corp.; or C. any other entity or person relating to i-STAT Corp.

Similarly, the second subpoenas request, "All documents which constitute, refer to, reflect or relate to the dates and contents of all written communications between the witness and John Wallace or any other employee of Nova Biomedical Corp. ('Nova')." i-STAT contends that this change resulted from this Court's request at the September 4, 1997 hearing to limit the original request to communications between Sturza and John Wallace or Nova employees.

Other requests from the second subpoenas follow the original subpoenas' requests almost to the letter, but with an extended time-period. For example, request six in the original subpoenas seeks, "Documents sufficient to show the number of shares or other units of all securities issued by i-STAT which were held (or in short position) in a proprietary account, during the period June 1 through July 31, 1995, together with documents sufficient to show each transaction therein" while request four in the second subpoenas requests the identical documents, but extends the time period to 1992. i-STAT contends that the new requests stem from comments of Neil Brickman, Esq. at the September 19 hearing: "[w]hat they don't ask for are the trades that Mr. Sturza may have made prior to June of 1995 … " and "Mr. Sturza made no trades in i-STAT before

his February [1995] letter." i-STAT contends it is entitled to discover whether counsel's representations are true and the facts surrounding Mr. Sturza's trades in i-STAT stock. Similarly, the third request in the second set of subpoenas, requesting "All transaction slips and other records sufficient to show all transactions (e.g., buy, sell, shorts) recommended or executed in any security issued by i-STAT in your proprietary account," corresponds to the third and fifth requests in the original subpoenas, which request essentially the same information. Further, request six of the second subpoenas, which requests documents showing all telephone calls or fax communications made to or received from any agent, employee, or representative of Nova, corresponds with request four of the original subpoenas, which requests information concerning telephone calls made to or received from any agent, employee, or representative of Nova, from June 1 through July 31, 1995.

## DISCUSSION

This court reviews a Magistrate Judge's order on a non-dispositive pre-trial matter under a "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (discovery matters generally are considered non-dispositive). A finding is "clearly erroneous" when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F.Supp. 187, 189 (S.D.N.Y.1988). "[W]ith respect to non-dispositive discovery disputes, the magistrate judge is afforded broad discretion which a court should not overrule unless this discretion is clearly abused." *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, No. 86–CV–41, 1992 WL 335964, *2 (N.D.N.Y. Nov. 12, 1992).

■ i-STAT first contends that Sturza's motion to quash the second subpoenas was not timely because Sturza served his motion via facsimile and by hand at the eleventh hour—the Saturday before Monday, March 16, 1998, when he was to appear and produce documents. Fed.R.Civ.P. 45(c)(3)(A) cur-

rently states that the court may quash a subpoena "[o]n timely motion." In the 1991 amendments to the Federal Rules, the word "timely" replaced the phrase, "promptly and in any event at or before the time specified in the subpoena for compliance therewith." i-STAT contends that while before the 1991 amendment, service anytime before the return date of the subpoenas was valid, post-amendment, "timely" means a reasonable service within the period before a subpoena's return date. While "timely" is undefined in the rule itself, and i-STAT cites no cases in support of its argument, it maintains that Sturza's service was unreasonable because it occurred so close to the subpoenas' return date.

The 1991 amendment states that the new revision is to "clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence." Fed.R.Civ.P. Rule 45, 1991 Amendment, Advisory Committee Notes. Because this language indicates that the revised rule takes no rights away from the party subpoenaed, and in fact is to enlarge that party's protections, it is reasonable to assume—and nothing in the 1991 Amendment Advisory Committee Notes indicates otherwise—that the subpoenaed party has at least as much time to move to quash as it previously did. Thus, as before the revision, service anytime before the subpoenas' return date should be considered timely. Here, the motion to quash was served by hand two days before the subpoenas' return date. The motion is thus "timely" under Rule 45.

■ i-STAT next contends that the second subpoenas were improperly quashed. Fed.R.Civ.P. 45 provides that a subpoena may be quashed if it: 1) fails to allow reasonable time for compliance; 2) requires a person who is not a party or an officer of a party to travel more than 100 miles from a place where that person resides, is employed or regularly transacts business in person; 3) requires disclosure of privileged or other protected matter and no exception or waiver applies; or 4) subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A). "Whether a subpoena imposes upon a witness an 'undue burden' depends upon 'such factors as rele-

vance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y.1996) (quoting *United States v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y.1979)). Moreover, Sturza's status as a non-party entitles him to "consideration regarding expense and inconvenience." *Id.* (citing Fed.R.Civ.P. 45(c)(2)(B)). In addition, Fed.R.Civ.P. 26 provides that discovery shall be limited by the court if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2).

In this case, i-STAT's second set of subpoenas is unduly burdensome under Fed. R.Civ.P. 45. First, the requests from the second subpoenas are overbroad. The second subpoenas request documents from 1992 onward, while the original subpoenas requested documents from 1994 onward. Given that i-STAT did not enter Nova's product market until well after 1992, i-STAT's request for documents and information from that date is overbroad. In addition, while it is true that Magistrate Judge Dolinger ruled that inquiries into the recipients of Sturza's analyses were relevant, he did not rule that *all* recipients of all of Sturza's analyses were relevant; only the recipients of information about i-STAT fell under this ruling. Thus, i-STAT's request for a printout of Sturza's entire computer Rolodex is overbroad, as are its requests for Sturza's customer lists from June and July 1995.

Second, as Magistrate Judge Dolinger noted, the second set of subpoenas is repetitive. As previously discussed, many of the requests in the second subpoenas correspond to requests made in the original subpoenas. These requests are "unreasonably cumulative or duplicative" under Fed.R.Civ.P. 26, and Magistrate Judge Dolinger did not err in quashing them, especially since Sturza had already complied with the first subpoenas, which asked for much the same information. Given Sturza's status as a non-party as well, the Magistrate did not err in quashing i-STAT's second set of subpoenas.

*Contempt*

i-STAT seeks an order of contempt against Sturza under Fed.R.Civ.P. 37 and 45(e) for (1) failing to appear for his deposition on August 29, 1997; (2) his "inappropriate" behavior during his first deposition on September 8, 1997: first, when he allegedly committed perjury, claiming to be unable to recall information that he subsequently recalled at his resumed deposition in February 1998, and second, when he failed to respond to questions posed to him; (3) his "deficient and untimely" motion to quash the second subpoenas; and (4) his "continued lack of candor at his resumed deposition."

28 U.S.C. § 636(e) provides that in a proceeding before a magistrate, certain acts constitute contempt. Such acts include: "misbehavior at a hearing or other proceeding," "failure to produce, after having been ordered to do so, any pertinent document," "refusal to appear after having been subpoenaed," and "any other act or conduct which if committed before a judge of the district court would constitute contempt of such court." 28 U.S.C. § 636(e). Once one of those acts is committed, the magistrate certifies the relevant facts to a district judge to determine the contempt application. 28 U.S.C. § 636(e). This statute provides no procedure by which a party may move to reconsider such a certification, or lack thereof. If i-STAT's contentions regarding Sturza's behavior are correct, i-STAT's first, second, and fourth grounds for an order of

contempt would arguably fit within the bounds of this statute.[1]

In this case, however, the Magistrate did not certify any of Sturza's behavior to the district court for determination of contempt, and i-STAT did not move to reconsider or appeal any denial of an order of contempt at the prior appearances before the Magistrate. The matter of Sturza's allegedly contemptuous conduct that occurred in August and September of 1997 should have been brought before the Magistrate or sought to be reconsidered before i-STAT's current motion. Further, if i-STAT wished to challenge Sturza's behavior at his February 1998 resumed deposition, it should initially have done so before the Magistrate—the April 2, 1998 hearing provided i-STAT with such an opportunity. i-STAT's motion for contempt is therefore denied.

## CONCLUSION

For the reasons stated above, the order quashing the subpoenas is affirmed, i-STAT's cross-motion to compel is denied, the order of contempt is denied. Each party shall bear its own costs.

**SO ORDERED.**

---

1. Because Sturza's motion to quash was timely, his service of his motion was not contemptuous.