Evan F. CHURCH, David A. Church and Judith H. Church, Plaintiffs,

v.

Arthur W. STELLER,[1] Individually and as Superintendent of Schools for the Kingston City Schools Consolidated; William Dederick; and Kathleen Frazer, Individually and as a member of the Board of Education of the Kingston City Schools Consolidated, Defendants.

David A. Church, Plaintiff,

v.

Kingston City School District; Arthur Stellar, Individually and in his official capacity as Superintendent of the Kingston City School District; and Douglas Goodemote, Individually and in his official capacity as Assistant Superintendent of the Kingston City School District, Defendants.

Nos. 97–CV–856 (LEK/DRH), 98–CV–917 (TJM/DRH).

United States District Court, N.D. New York.

Feb. 2, 1999.

1. The correct spelling is "Stella r." Stellar Aff. (Docket No. 70).

Bohl, Della Rocca & Dorfman, P.C., Albany, NY (James B. Tuttle, of counsel), for plaintiffs.

Louis J. Patack, Deputy Counsel, School Administrators Association of New York State, Latham, NY, for plaintiff David Church.

2. The docket numbers referenced herein are to

Shaw & Perelson, LLP, Poughkeepsie, NY (Susan G. Whiteley, of counsel), for defendants.

Maynard, O'Connor, Smith & Catalinotto, LLP, Albany, NY (Michael Catalinotto, Jeffrey E. Hurd, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Plaintiffs have moved this Court for an order pursuant to 28 U.S.C. § 636(e) certifying facts to the district court which plaintiffs contend constitute contempt of a settlement agreement "so ordered" by the Court. Docket Nos. 64–66.[2] For the reasons which follow, that motion is granted.

### I. 28 U.S.C. § 636(e)(1)

█ The jurisdiction of a magistrate judge derives from the Federal Magistrates Act, 28 U.S.C. § 636. The jurisdiction of a magistrate judge on a motion for contempt is described in section 636(e) in pertinent part as follows:

In a proceeding before a magistrate judge, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ.... Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order requiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a sunnare manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a judge of the court, or commit such person upon the conditions applicable in the case

*Church v. Steller,* No. 97–CV–856 (LEK/DRH).

of defiance of the process of the district court or misconduct in the presence of a judge of that court.

Thus, on a motion for contempt, a magistrate judge functions only to "certify the facts." *See Litton Systems, Inc. v. AT & T,* 700 F.2d 785, 827 (2d Cir.1983); *Stein Indus., Inc. v. Jarco Indus., Inc.,* 33 F.Supp.2d 163, 164–65 (E.D.N.Y.1999); *Nova Biomedical Corp. v. i–STAT Corp.,* 182 F.R.D. 419, 423–24 (S.D.N.Y.1998); *Tenen v. Winter,* No. 94–934S, 1996 WL 947560, at *8 (W.D.N.Y. July 23, 1996).[3] This limitation appears to exist even where the parties consent to proceed before a magistrate judge pursuant to section 636(c). *See Collins v. Foreman,* 729 F.2d 108, 117 (2d Cir.1984); *Stein Indus., Inc.,* 1999 WL 16342, at *2.

■■■■ The certification of facts under section 636(e) serves to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt. *Proctor v. State Gov't of N.C.,* 830 F.2d 514, 521 (4th Cir.1987); *Tenen,* 1996 WL 947560, at *8. In determining whether to certify facts, a magistrate judge may conduct a hearing on the issue of certification. *See In re Kitterman,* 696 F.Supp. 1366, 1370 (D.Nev.1988); *NLFC, Inc. v. Devcom Mid–America, Inc.,* No. 93 C 0609, 1994 WL 188478, at *6 (N.D.Ill. May 11, 1994); *see also Rinaolo v. Better,* No. 97–CV–413 (FJS/RWS), slip op. at p. 6 (N.D.N.Y. Nov. 14, 1997) (Smith, M.J.). Absent magistrate judge certification, a district court may not proceed further on a motion for contempt where the conduct at issue occurred before a magistrate judge. *See Nova Biomedical Corp.,* 182 F.R.D. at 423–24. Only a district court may resolve issues of credibility and fact. *See Taberer v. Armstrong World Indus., Inc.,* 954 F.2d 888, 907–08 (3d Cir.1992) (district court erred in failing to conduct a de novo hearing after certification of contempt by magistrate judge); *Stein Indus., Inc.,* 1999 WL 16342, at *2. Whether the conduct of a party constitutes contempt and any sanctions therefor are committed to the discretion of the district court. *Litton Sys., Inc.,*

700 F.2d at 827; *Tenen,* 1996 WL 947560, at *8. However, upon certification a magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt. *See Peker v. Fader,* 965 F.Supp. 454, 460 (S.D.N.Y.1997).

## II. Facts

In accordance with 28 U.S.C. § 636(e), the following facts are certified to the district court. Those facts are derived from affidavits submitted by the parties, are described in the light most favorable to plaintiffs as the moving parties, and do not constitute findings of fact. Except where noted, however, such facts do not appear to be disputed by the defendants.

Plaintiff David Church ("Church") was employed by the Kingston Enlarged City School District ("school district") as the principal of the Kingston High School. His son, Evan Church, was at the times alleged in the complaints a high school student within the school district but attending a different high school under a special program. During his final year of high school, Evan Church applied for acceptance at various colleges which necessitated providing a transcript of high school courses and grades. The school district endeavored to convert the courses and grades from the high school attended by Evan Church to a transcript from the school district. Church became involved in this process from which arose a series of charges and counter-charges among the parties. Church was suspended as principal of the high school but remained an employee of the school district.

Civil and administrative actions followed. The Churches commenced an action alleging violations of their civil rights by the school district, its superintendent, and various members of its board of education. *Church v. Steller,* No. 97–CV–856 (LEK/DRH). Church commenced a second action alleging violations of rights under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. *Church*

---

**3.** Proposals have recently been made to expand the contempt authority of magistrate judges. *See, e.g.,* Federal Courts Improvement Act of 1998, H.R. 2294, 105th Cong. § 202 (1998); Ju- dicial conference of the United States, Long Range Plan for the Federal Courts 102 (Dec. 1995), 166 F.R.D. 49, 162 (1996).

*v. Kingston City Sch. Dist.*, No. 98–CV–917 (TJM/DRH).[4] Church also commenced two administrative proceedings against the school district, one before the New York State Division of Human Rights alleging violations of his rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and one before the New York State Public Employment Relations Board alleging improper employment practices. The school district commenced an administrative proceeding against Church under N.Y. Educ. Law § 3020–a (McKinney 1995) alleging improper conduct by Church as principal of the high school.

Following a series of settlement conferences, an agreement was reached among all parties resolving all proceedings. The terms of that agreement were placed on the record on September 11, 1998. Tr. of Proceedings on Sept. 11, 1998 (Docket No. 71, Ex. A) ("Agreement"). Among the school district's interests in entering into the Agreement was terminating Church's employment with the school district. Thus, the Agreement included a provision that Church would resign effective June 30, 1999 and attached a signed letter of resignation. Agreement, p. 6 & Ex. B. Among Church's interests in entering into the Agreement was optimizing his opportunity to obtain new employment by lifting his suspension and resuming his employment with the school district while he sought a new position elsewhere.[5] Thus, the Agreement included a provision that, among other things, the letter of resignation would remain sealed. Agreement, p. 10.[6] All parties affirmed the Agreement and it was "so ordered." Agreement, pp. 13–27.[7]

The school district board of education was scheduled to meet on the evening of September 16, 1998. Dr. Arthur Stellar, the Superintendent of Schools, advised defendants' attorneys, Susan Whiteley and Jeffrey Hurd, that the school board intended to act on Church's letter of resignation and release the public statement at the board meeting. Stellar Aff., ¶¶ 9–14. Because the school district possessed only an unsigned copy of Church's letter of resignation, Stellar asked the attorneys to confirm with Church's attorney, James Tuttle, that the board could act on the unsigned copy. *Id.*

The parties dispute what occurred in the telephone calls between Tuttle and defendants' attorneys. According to Tuttle, on September 14 or 15, 1998, he spoke by telephone on separate occasions with both Whiteley and Hurd. Whiteley and Hurd both asked Tuttle if Church would object to the school board acting on Church's resignation without the signed original, which had been filed as an attachment to the transcript of the settlement agreement. Docket No. 67. Tuttle advised the attorneys that he was not aware of any reason why the Board should act on the letter of resignation at all. Although they did not specify any authority for the proposition at that time, they both made general statements to the effect that the Board felt obligated to do so for some reason based on New York State law. I told them I was unaware of any such obligation[8] and that I would object to any public action with regard to any of the terms and conditions of the settlement or the letter of resignation itself, *and that I would expect that any action taken on the letter of resignation*

---

4. These actions are hereby consolidated pursuant to Fed.R.Civ.P. 42(a).

5. Under the Agreement, Church is to remain employed by the school district for the 1998–99 school year as the "Kingston High School Principal on Special Assignment for Curriculum Development and Instruction." Agreement, p. 6 & Ex. A.

6. The Agreement provides that "[f]inally, it's the agreement of all of the parties that the terms and conditions of this settlement, all documents effectuating this settlement and all future matters regarding it be maintained in confidentiality and the parties would request that the Court so order this agreement to that effect."

7. The various disputes between Church and the school district had received publicity in the Kingston area. The parties agreed to the release by the school district of a statement advising that all matters had been resolved which incorporated an apology by the school district to Evan Church. Agreement, p. 9 & Ex. I.

8. The Churches contend that the school board was not legally obliged to act immediately on Church's resignation. *See* Ricken Aff. (Docket No. 74), ¶¶ 3–4; Renken Aff. (Docket No. 75), ¶ 3; Pls.Mem. of Law (Docket No. 77), p. 14. Defendants have not contested this assertion.

*would be done in executive session only* .... Tuttle Aff. (Docket No. 73), ¶ 7 (emphasis added). According to Whiteley, however, "[a]t no time was the issue of Board action in or out of Executive Session raised in the conversation I had with Mr. Tuttle" and "Mr. Tuttle did not say anything to me regarding the Board acting in Executive Session." Whiteley Aff. (Docket No. 70), ¶¶ 5 & 6. Stellar recalls advising Hurd that the school board intended to act on Church's resignation " 'in Open Session.' " Stellar Aff., ¶ 16. No affidavit was submitted from Hurd, who has not participated in these proceedings. *See* Notice Filed Sept. 30, 1998 (Docket No. 68) (law firm not representing any defendant in contempt proceedings).

Prior to the school board meeting on September 16, 1998, Stellar directed Assistant Superintendent Douglas Goodemote to prepare a resolution for the board accepting Church's resignation. Stellar Aff., ¶ 19; Goodemote Aff. (Docket No. 70), ¶ 5. The resolution stated that Church was resigning effective on or before June 30, 1999 "for the purpose of retirement." Defs.Mem. of Law (Docket No. 71), Ex. B. The inclusion of the words "for purposes of retirement" exceeded the contents of Church's letter of resignation and jeopardized Church's ability to take advantage of any early retirement incentives offered to employees by the school district prior to June 30, 1999, an option reserved to Church under the Agreement. Agreement, p. 8; Church Aff. (Docket No. 76), ¶ 11. The board adopted the resolution, announced it in open session, and then released the public statement. Both actions were reported the next day in a local newspaper. Church Aff., ¶ 3 & Ex. A.

By letter dated September 21, 1998, Tuttle requested an order holding defendants in contempt of court. Docket No. 65. An order was then entered directing defendants to show cause why they should not be held in contempt for violation of the Agreement. Docket No. 66. All parties have filed affidavits and memoranda of law.[9] Oral argument

was heard on January 8, 1999. Decision was reserved.

## III. Discussion

### A. Violations of the Agreement

 To establish civil contempt under section 636(e)(1), a party must prove (1) the existence of a lawful order and (2) a violation of that order. A settlement agreement "so ordered" by a court constitutes a lawful order for purposes of section 636(e)(1). *See United States v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 899 F.2d 143, 146 (2d Cir.1990) ("A federal court may punish contempt of a lawful order, whether the order issues directly from the court or from a consent decree agreed to by the parties."); *Proctor,* 830 F.2d at 516. Proof of willfulness is not an essential element of civil contempt. *See Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir.1989); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,* 869 F.2d 34 (2d Cir.1989). Here, defendants do not dispute that the Agreement was "so ordered" and thus a "lawful order" within the meaning of section 636(e)(1). There is also no dispute that defendants (1) publicly announced the acceptance of Church's resignation and (2) adopted a resolution accepting that resignation "for purposes of retirement." The question is whether these actions violated the Agreement.

 Removal of his suspension and resumption of his employment by the school district were important elements of the Agreement for Church because in his view they would facilitate obtaining new employment. Termination of Church's employment was an important element of the Agreement for defendants. The parties resolved this conflict in the Agreement by Church's reemployment until June 30, 1999 but without public disclosure of his resignation. Public disclosure of the resignation by defendants violated that term of the Agreement.

 Defendants contend, however, that in the conversations between Tuttle, White-

9. In their pleadings plaintiffs allege additional conduct by defendants subsequent to September 21, 1998 which plaintiffs allege constitute additional violations of the Agreement. Those allega-

tions are beyond the scope of the order to show cause, defendants have not addressed them, and, therefore, those allegations have not been considered herein.

ley and Hurd prior to the meeting of the school board on September 16, 1998, Church authorized the defendants to act on his resignation and, the defendants believed, to do so in a session open to the public. Viewing the evidence in the light most favorable to Church, while Tuttle gave defendants permission to act on Church's letter of resignation, Tuttle explicitly told Whiteley and Hurd that any such action should be taken by the school board in executive, not open session. Tuttle Aff., ¶ 7. The knowledge of Whiteley and Hurd, as agents of the defendants, that any school board action on Church's resignation could only be taken in executive session is imputed to the defendants as their principals. *See Center v. Hampton Affiliates, Inc.,* 66 N.Y.2d 782, 497 N.Y.S.2d 898, 899, 488 N.E.2d 828 (1985) (Under New York law, the knowledge of an agent is imputed to the principal regardless of whether the information was actually communicated); *see also Novak v. TRW, Inc.,* 822 F.Supp. 963, 974 n. 13 (E.D.N.Y.1993) ("The relationship between attorney and client is that of principal and agent and the basic laws of agency dictate that an agent's knowledge is imputed to its principal. There is a presumption that an agent will relay to its principal any relevant information that he has acquired.") (citations omitted).

Viewed in the light most favorable to the defendants, the evidence establishes at best that Tuttle did not discuss with Whiteley whether the school board would act on Church's resignation in executive or open session. It was assumed by the parties, however, that the board's action would take place in open session because New York law so required. Stellar Aff., ¶ 17.[10] Thus, when the school board publicly announced the passage of the resolution accepting Church's resignation, it believed it did so with Church's permission.

There thus exist questions of fact with regard at least to whether Tuttle and Whiteley or Tuttle and Hurd discussed whether the school board could publicly announce its acceptance of Church's resignation, what was

communicated by Whiteley and Hurd to Stellar, and, if the attorneys did not explicitly discuss a public announcement, whether the defendants reasonably assumed that Tuttle's approval of school board action on Church's resignation bespoke approval of a public announcement. However, because plaintiffs have demonstrated the existence of evidence which, if credited, would constitute contempt, the facts supporting their motion for contempt on this ground are hereby certified to the district court. Because only defendants Stellar, the school district and Goodemote are alleged to have participated in the conduct described herein, the certification of this ground is limited to those three defendants.

■ As to plaintiffs' contention that the defendants violated the Agreement by including the words "for purposes of retirement" in the resolution accepting Church's resignation, the inclusion of those words violated the Agreement. *See* Agreement, p. 8 (early retirement incentives) & Ex. B (letter of resignation makes no reference to retirement). Defendants do not appear to contest this ground, noting only that the inclusion of those words in the resolution was inadvertent. *See* Stellar Aff., ¶¶ 19–22; Goodemote Aff., ¶¶ 5–6. Because inclusion of these words constituted a violation of the Agreement, the facts regarding it are also certified to the district court. As with the previous ground, because only defendants Stellar, the school district and Goodemote are alleged to have participated in any of the conduct described herein, the certification of this ground as well is limited to those three defendants.

### B. Remedies

Plaintiffs seek three forms of relief for the conduct herein certified to the district court. First, they seek compensation to Church for the loss of employment he would have obtained if his resignation had not been made public. Second, they seek compensation for retirement benefits Church would have received if the resolution accepting his resignation had not included the words "for the

---

**10.** Church challenges this view of New York law. *See* Renken Aff., ¶ 3; Ricken Aff., ¶¶ 5–6; Pls. Mem. of Law, pp. 11–17.

purposes of retirement." Finally, they seek reimbursement for attorney's fees incurred in prosecuting this motion. Pls.Mem. of Law, p. 7.[11]

 The purpose of civil contempt is to compel compliance with a court order and to compensate a party for injuries resulting from non-compliance. *See New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350–51 (2d Cir.1989). Under section 636(e), the determination of the appropriate remedy upon a finding of contempt is committed to the district court. *See Litton Systems, Inc.*, 700 F.2d at 827; *Tenen*, 1996 WL 947560, at \*8. However, a magistrate judge may recommend sanctions for the consideration of the district court. *See Peker*, 965 F.Supp. at 460. Therefore, for the assistance of the district court, the remedies requested by plaintiffs are discussed below.

### 1. Compensation for Lost Employment

Church contends that as a result of the public announcement of his resignation, he has lost opportunities for new employment for which he should be compensated. Church has offered no evidence, however, to establish what employment opportunities were lost, that he would have obtained any such employment, or the rate of pay he would have received. On the present record there exists insufficient evidence to support Church's claim for lost employment opportunities. *Cf. Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir.1996) (expert testimony regarding lost future earnings properly excluded where based on unrealistic assumptions); *Beckett v. Atlas Air, Inc.*, 968 F.Supp. 814, 823 (E.D.N.Y.1997) (party may not recover for lost wages that are merely speculative); *Boals v. Gray*, 577 F.Supp. 288, 295–96 (N.D.Ohio 1983) (effect of wrongful suspension on future employment too speculative to provide basis for damages).

On the present record, then, there exists insufficient evidence to support Church's claim that the public announcement of his resignation denied him new employment.

Absent additional and sufficient evidence to support this claim, Church's claim for compensation on this ground should be denied.

### 2. Compensation for Lost Retirement Benefits

Plaintiffs next seek compensation for anticipated retirement benefits which Church asserts will be denied him because the resolution of the school board accepting his resignation included the words "for purposes of retirement." First, it appears that any adverse effect from the inclusion of these words in the resolution may be obviated by the school board passing an amended resolution deleting the offending words.[12] Second, there is no evidence to date that Church has lost any retirement benefit he might otherwise have received. Absent such evidence, compensation for the loss of such benefits would be both premature and speculative.

Therefore, it is recommended on the present record that defendants be directed to pass an amended resolution accepting Church's resignation without reference to retirement.

### 3. Attorney's Fees

Finally, plaintiffs seek reimbursement for the attorney's fees incurred in the prosecution of this motion. While a finding of willful conduct is not essential to a finding either of civil contempt or, if contempt is found, of a victim's entitlement to attorney's fees, a finding of willfulness strongly supports an award of such fees. *See Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996). As described above, issues of fact exist whether any violation of the Agreement by any defendant was willful or inadvertent. If the district court finds that any defendant or any attorney for defendants willfully violated the Agreement, it is recommended that plaintiffs be awarded attorney's fees. *See id.* (fees awarded for civil contempt based on conduct of contemner's attorney). If no willful violation is found, it is recommended that plaintiffs' request for attorney's fees be denied.

---

**11.** At oral argument both plaintiffs and defendants explicitly declined to request that the Agreement be voided.

**12.** At oral argument counsel for defendants indicated that defendants had no objection to amending the resolution.

**222**

### IV. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that the two above captioned actions are hereby consolidated pursuant to Fed.R.Civ.P. 42(a) with *Church v. Steller,* No. 97–CV–856 (LEK/DRH) designated the "Lead Case" and *Church v. Kingston City Sch. Dist.,* 98–CV–917 (TJM/DRH) designated the "Member Case;" and

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 636(e)(1), the facts described in section II above are hereby certified to the district court as constituting contempt of the Agreement by defendants Stellar, the school district and Goodemote as follows:

1. Public release of Church's letter of resignation in violation of the provision for confidentiality (Agreement, p. 10); and

2. Inclusion of the words "for purposes of retirement" in the resolution of the school board accepting Church's resignation in violation of the provision regarding early retirement incentives (Agreement, p. 8).[13]

**IT IS SO ORDERED.**

---

**13.** Section 636(e) provides that upon a certification of the facts for contempt, a magistrate judge *"may* serve or cause to be served upon any person whose behavior is brought into question under this section an order ... to show cause" for contempt. (Emphasis added). Plaintiffs' counsel is hereby directed to submit to the district court a proposed order to show cause consistent with this decision leaving blank the dates for the return and service thereof as well as any other applicable dates.