**WM HIGH YIELD, et al., Plaintiffs,**

v.

**Michael A. O'HANLON, et al., Defendants.**

**No. IP–05–115–Misc.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 17, 2006.

**ENTRY ON NON–PARTY 40/86 ADVISORS, INC.'S EMERGENCY** [1] **MOTION TO QUASH**

BAKER, United States Magistrate Judge.

## I. Background.

The parties in this Eastern District of Pennsylvania litigation are battling over alleged securities fraud. Their dispute spilled into this Court after Defendant Deloitte & Touche, LLP ("Deloitte") served a subpoena duces tecum on 40/86 Advisors, Inc., a non-party investment advisor located in Carmel, Indiana. At the time Plaintiffs filed the underlying lawsuit, 40/86 Advisors managed Evergreen Funding Ltd/Evergreen Funding Corp. ("Evergreen"), a former plaintiff in the underlying litigation.[2] Deloitte now seeks documents pertaining to the underlying litigation, 40/86 Advisors, Evergreen, the other Plaintiffs, and transactions involving DVI, Inc., Deloitte's outside advisor. [JAMS Docket No. 13, Mem. p. 2.]

40/86 Advisors filed an emergency motion to quash on December 9, 2005. [JAMS Docket No. 1.] 40/86 Advisors contends that the subpoena must be quashed because it poses an undue burden against a non-party. [JAMS Docket No. 1, pp. 4–7.] Deloitte responds that this Court should defer ruling on the merits of the motion to quash and invites the Court to transfer this matter to the Eastern District of Pennsylvania for resolution. [JAMS Docket No. 13, Mem. p. 1.] Alternatively, Deloitte argues that the motion should be denied for three reasons: (1) 40/86 Advisors waived any valid objection to the subpoena when it did not serve written objections within fourteen days of service pursuant to Fed.R.Civ.P. 45(c)(2)(B); (2) 40/86 Advisors has not shown undue burden; and (3) Deloitte has shown that its requests are narrowly tai-lored to obtain relevant information. [JAMS Docket No. 13, Mem. pp. 4–8.]

For the reasons set forth below, 40/86 Advisors' motion is GRANTED.

## II. Discussion.

### A. Preliminary Matters.

Before the Court can assess the merits of 40/86 Advisors' motion, it must resolve the two procedural issues noted above of transfer and waiver raised by Deloitte. If the Court were to agree with Deloitte on either of these issues, the merits of the motion would be beyond reach. The Court addresses these two issues in turn.

### 1. Transfer to the Eastern District of Pennsylvania.

Deloitte contends that "the interests of efficiency and uniformity dictate that this Court" transfer 40/86 Advisors' motion to the Eastern District of Pennsylvania for resolution by the judge who is presiding over the underlying litigation. [JAMS Docket No. 13, Mem. p. 1.] Deloitte states that "courts in the Seventh Circuit and elsewhere have approved of this approach." [JAMS Docket No. 13, Mem. p. 4.] Arguing that transfer is contrary to more recent controlling law, 40/86 Advisors opposes Deloitte's request. [JAMS Docket No. 14, pp. 3–4.] The Court finds 40/86 Advisors' position more convincing.

On March 18, 1996—twelve days after the Eastern District of Wisconsin permitted transfer of a subpoena enforcement case[3]—the Seventh Circuit stated in an unrelated case that "it is not clear to us

---

advised the Court during a December 12, 2005, telephonic status conference that an immediate ruling was not required. Accordingly, at the parties' request, this motion was fully briefed, including a surreply.

**2.** Deloitte served its subpoena after Evergreen notified Deloitte that it would be withdrawing

its claims. The Eastern District of Pennsylvania entered the parties' stipulation dismissing Evergreen's claims on January 4, 2006. [JAMS Docket No. 16, Ex. A.]

**3.** *In re Schneider Nat'l. Bulk Carriers, Inc.,* 918 F.Supp. 272, 274 (E.D.Wis.1996).

that any provision in the Judicial Code or the Rules of Civil Procedure allows a judge to transfer a particular motion for decision elsewhere." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 79 F.3d 46, 48 (7th Cir.1996). Deloitte attempts to stretch *Orthopedic Bone Screw* beyond its probable limits to support transfer by noting that the Seventh Circuit affirmed a district court's action on a motion to compel originating from another forum. [JAMS Docket No. 18.] Deloitte's efforts are unavailing because the Seventh Circuit did not endorse the transfer of a pretrial motion in a routine civil proceeding. Instead, it endorsed the transfer of motions for protective orders in multidistrict litigation where 28 U.S.C. § 1407 conferred all the powers of the judge in the subpoena-issuing district to the judge presiding over the underlying multidistrict litigation. *Orthopedic Bone Screw*, 79 F.3d at 48. The Seventh Circuit only determined that transfer of a motion to compel in this multidistrict litigation was consistent with both Rule 26(c) and 28 U.S.C. § 1407. *Id.*

■ Any potential persuasive power of two cases relied upon by Deloitte, *In re Schneider*, 918 F.Supp. 272, and *Pactel Personal Commc'ns v. JMB Realty Corp.*, 133 F.R.D. 137, 139 (E.D.Mo.1990), wanes in the aftermath of *Orthopedic Bone Screw*. Post *Orthopedic Bone Screw*, district courts in the Seventh Circuit disfavor transferring Rule 45 motions to quash except in the instance of multidistrict litigation. *See Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D.Ind.2001) (a court sitting in the district where the subpoena was issued and where responsive documents are located is the "proper forum to rule on a motion to enforce the subpoena duces tecum"); *Kruse, Inc. v. United States*, 2000 U.S. Dist. LEXIS 16062, at *2 (N.D.Ind.2000) (the presiding court in a tax penalty case declined to enforce a subpoena issued from another jurisdiction and stated unequivocally that "under Rule 45(c)(3)(A) we do not have the authority to rule on the motion to quash"); *Kearney v. Jandernoa*, 172 F.R.D. 381, 382 (N.D.Ill. 1997) (relying on *Orthopedic Bone Screw*, the court held that a non-party's discovery motions could not be transferred to the forum where underlying litigation was located). Thus, Deloitte has not convinced this Court that, under the circumstances presented here, this Rule 45 motion may be properly transferred to another district.

Moreover, the language of the rule itself persuasively counsels against transfer. Rule 45(c)(3)(A) plainly states that "[o]n a timely motion, *the court by which a subpoena was issued* shall quash or modify . . ." Fed. R. Civ. P 45(c)(3)(A) *(emphasis added). See Hager v. CSX Transportation, Inc.*, 2005 U.S. Dist. LEXIS 33770, at *4 (N.D.Ind. December 6, 2005) (unequivocal language of Rule 45(c)(3) prevented non-issuing court from ruling on a motion to quash non-party subpoena duces tecum). Consequently, the Court sustains 40/86 Advisors' objection to transferring the enforcement of this subpoena to the Eastern District of Pennsylvania and retains jurisdiction over this matter.

## 2. Waiver.

Deloitte served its subpoena on 40/86 Advisors on November 15, 2005 with a stated date of return for December 13, 2005. [JAMS Docket No. 13, Ex. A.] On December 9, 2005, 40/86 Advisors filed its motion to quash. [JAMS Docket No. 1.] Without discussion, Deloitte asserts that 40/86 Advisors *"waived* any relevancy objections by failing to serve timely objections" to Deloitte's subpoena duces tecum. [JAMS Docket No. 13, Mem. p. 5.] Deloitte premises its assertion on the fact that 40/86 Advisors did not serve written objections within Rule 45(c)(2)(B)'s fourteen-day limit. *[Id.]* 40/86 Advisors counters that no waiver occurred because it opted in-

stead to file a timely motion to quash pursuant to Rule 45(c)(3). Deloitte does not address 40/86 Advisors' argument in its surreply. Deloitte's silence might suggest that it has conceded to 40/86 Advisors' position—at least implicitly. However, this issue warrants further discussion.

Rule 45(c)(3) allows a court to quash a subpoena on a "timely" Rule 45 motion, but is silent as to what constitutes a "timely" motion. At least one district court in this Circuit has, consistent with several other district courts, held generally that failure to serve written objections within the fourteen-day limit prescribed by Rule 45(c)(2)(B) results in waiver. *See Brogren v. Pohlad,* 1994 WL 654917, at *1 (N.D.Ill. Nov.14, 1994) (non-party waived its right to object to a subpoena duces tecum where it waited for over two months to serve its written objections). *See also Nat'l Paint & Coatings Ass'n v. City of Chicago,* 147 F.R.D. 184, 185 (N.D.Ill.1993) (court implied that a non-party may waive its right to object where it does not serve written objections within the fourteen-day period specified in Rule 45(c)(2)(B)); *United States v. TRW, Inc.,* 211 F.R.D. 388, 392 (C.D.Cal.2002) (in addressing Rule 45 and the time limit in Rule 45(c)(2)(B), the court noted that "failure to serve objections within time provided in Rule 45(c)(2)(B) waives all grounds for objection, including privilege"); *Tutor–Saliba Corp. v. United States,* 30 Fed.Cl. 155, 156 (Fed.Cl.1993) ("timeliness" for purposes of Rule 45(c)(3) means the fourteen-day time limit articulated in Rule 45(c)(2)(B)).

Other district courts have held that a non-party may timely move to quash a subpoena until the subpoena's return date has passed. *See United States v. Diabetes Treatment Ctrs. of Am., Inc.,* 238

F.Supp.2d 270, 278 (D.D.C.2002); *Nova Biomedical Corp. v. i–STAT Corp.,* 182 F.R.D. 419, 422 (S.D.N.Y.1998). Even in those jurisdictions where waiver is determined in accordance with Rule 45(c)(2)(B)'s time limit, a court may excuse untimely objections "'in unusual circumstances and for good cause.'" *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 636 (C.D.Cal.2005) *(citing McCoy v. Southwest Airlines Co. Inc.,* 211 F.R.D. 381, 385 (C.D.Cal.2002), and collecting cases).

Rule 45(c)(2)(B) does not require a person served with an objectionable subpoena to follow its directives in lieu of filing a motion to quash pursuant to Rule 45(c)(3). Instead, Rule 45(c)(2)(B) states that "a person commanded to produce and permit inspection and copying, *may* ... serve ... written objection," and by so doing be spared the burden of further action unless a court orders otherwise. Fed.R.Civ.P. 45(c)(2)(B) *(emphasis added).* The permissive nature of Rule 45(c)(2)(B) reflects the underlying purpose of the 1991 amendments to Rule 45, which were designed to afford greater protections to those served with a subpoena than were available prior to amendment and not "to diminish the rights conferred by ... any other authority." 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.2d* § 2463 (1995).

▮ Given the intended purpose of the 1991 amendments and the permissive nature of Rule 45(c)(2)(B), 40/86 Advisors' decision not to serve timely Rule 45(c)(2)(B) objections did not divest it of its right under Rule 45(c)(3) to timely move to quash Deloitte's subpoena.[4] *See Jackson v. Brinker,* 147 F.R.D. 189, 194 (S.D.Ind. 1993) (acknowledging that Rule 45 pro-

---

**4.** The Court does not find *Brogren*—a case cited by Deloitte in support of its position—persuasive. In that case the objecting party waited until after the return date of the sub-

poena before objecting or seeking the court's protection. As such, the subpoenaed party's objections were untimely even in accordance with Rule 45(c)(3).

vides a party several distinct means of resisting a subpoena duces tecum). Even if the Court were inclined to hold otherwise, the breadth of Deloitte's subpoena, 40/86 Advisors' non-party status in this matter, and the fact that as early as December 2, 2005, 40/86 Advisors communicated its intent to seek court assistance should Deloitte decline to withdraw its subpoena [JAMS Docket, No. 2, Ex. C], place 40/86 Advisors in the league of those non-parties whose untimely objections were properly entertained.[5] Consequently, the Court overrules Deloitte's objection to the timeliness of the motion to quash.

### B. Motion to Quash.

Non-party 40/86 Advisors moves to quash Deloitte's subpoena under Rule 45(c)(3)(A) on the basis that it poses an undue burden and requires the disclosure of attorney-client privileged information. Alternatively, 40/86 Advisors seeks this Court's protection pursuant to Rule 26(b)(2). [JAMS Docket No. 1, pp. 6–7.] Deloitte counters that relevancy is not a proper ground for quashing a subpoena. Moreover, Deloitte asserts that 40/86 Advisors has not met its burden of persuasion, the documents Deloitte seeks are relevant to the "plaintiffs' reliance on alleged misstatements by Deloitte,"[6] and 40/86 Advisors admits that it has relevant documents.[7] [JAMS Docket No. 13, Mem. p. 5.]

Where the moving party shows that a subpoena duces tecum subjects it to an undue burden or requires the disclosure of attorney-client privileged information, a court shall modify or quash it pursuant to Fed.R.Civ.P. 45(c)(3)(A). *CSC Holdings Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). *See also Jones v. Hirschfeld*, 219 F.R.D. 71, 74–75 (S.D.N.Y.2003) ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant."). Additionally, a court may limit discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2). The Court can make short work of Deloitte's objection to the use of relevancy in the Court's evaluation of this motion. Relevancy is one of several factors a court must consider when computing undue burden. *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662–63 (D.Kan.2003) (to determine whether a Rule 45 subpoena is unduly burdensome, a court may weigh a number of factors including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed."). Additionally, non-party status is a significant factor a court must consider when assessing undue burden for

---

5. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51–52 (S.D.N.Y.1996) (court entertained non-party's motion to quash subpoena duces tecum filed after Rule 45(c)(2)(B) time limit and excused untimeliness where requests were overly broad, subpoenaed witness was a non-party acting in good faith, and counsel for non-party communicated concerns with the subpoena and attempted to resolve dispute prior to filing motion).

6. Deloitte also contends that "documents requested are relevant to 40/86 Advisors' apparent decision not to pursue this case." [JAMS

Docket No. 13, p. 5.] Deloitte premises this contention on its belief that 40/86 purchased Evergreen's assets. 40/86 Advisors presented evidence by way of affidavit from its legal counsel disputing any involvement in the dissolution, sale, or purchase of Evergreen's assets. [JAMS Docket No. 15, Ex. A.] As such, Deloitte's assertion of relevancy on this basis is negated.

7. The Court is not persuaded that 40/86 Advisors admits that it has relevant documents. [See JAMS Docket No. 14, p. 6.]

the purpose of a Rule 45 motion. *United States v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, at *4 (N.D.Ill. Oct.21, 2005).

■ 40/86 Advisors in essence argues that the subpoena seeks information that is not relevant to the underlying litigation and the requests are overly broad. [JAMS Docket No. 14, pp. 7–8.] In support, 40/86 Advisors shows that: (1) its only nexus to the underlying litigation is its management of Evergreen; (2) its relationship to Evergreen commenced subsequent to Evergreen's purchase of DVI bonds; (3) Evergreen is no longer a legal entity, and its claims have been voluntarily dismissed from the underlying action; and (4) Deloitte requests information over either an unlimited period of time or, when limited, over seven years. This showing is sufficient. Deloitte's subpoena inflicts an undue burden because the requests are overly broad and not reasonably calculated to lead to the discovery of admissible evidence per Rule 26.[8]

In most instances, Deloitte's requests encompass an unlimited range of information. [See JAMS Docket 13, Ex. A.] It is difficult to conceive how these broad, sweeping requests for documents from 40/86 Advisors—which has no involvement with any existing Plaintiffs—are reasonably calculated to lead to the discovery of admissible evidence related to those Plaintiffs' reliance on alleged misstatements by Deloitte. For instance, Request No. 10 seeks "any and all documents demonstrating, reflecting, referring to or relating to any promotional materials or descriptions of your [40/86 Advisors'] investment philosophy." Request No. 11 asks for "any and all documents or communications in your possession, custody or control demonstrating, reflecting, relating to or referring to

the management, ownership, organizational structure or firm policies of Evergreen or any other Plaintiff." Deloitte offers little in the way of explaining how these and other similarly sweeping requests can be properly used to defend itself against the existing Plaintiffs' claims. This is precisely the type of unsupported fishing expedition frowned upon by the Seventh Circuit. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir.2004) (subpoena for records unduly burdensome where requesting party could not articulate a proper use).

Moreover, Deloitte fails to show that the information it seeks regarding Evergreen and the other remaining Plaintiffs is unavailable from other sources. Many of the requests pertain to Evergreen and the remaining Plaintiffs. Yet, Deloitte does not contend or attempt to show that it has been unable to obtain this information from those parties to the underlying litigation. *See Moon*, 232 F.R.D. 633, 637–38 (requesting party's failure to demonstrate that it had attempted to obtain documents from party to underlying litigation before serving subpoena on non-party weighed in court's determination that requests were an undue burden). Consequently, 40/86 Advisors' motion is well-taken and the Court grants its motion to quash.

## III. Conclusion.

This Court is the proper forum to entertain 40/86 Advisors' motion to quash the non-party subpoena served on it by Defendant Deloitte & Touche, and the motion is timely. Thus, the Court declines to transfer this motion to the Eastern District of Pennsylvania and overrules Deloitte's objection that 40/86 Advisors waived its right

---

**8.** Other than a cursory reference to attorney-client privilege in its emergency motion, 40/86 Advisors fail to brief its contention that the subpoena must be quashed for the additional reason that it seeks attorney-client privileged information. Thus, the Court makes no ruling on that basis.

to object to Deloitte's subpoena duces tecum. Deloitte's subpoena poses an undue burden on non-party 40/86 Advisors. Pursuant to Fed.R.Civ.P. 45(c)(3)(A)(iv), the Court GRANTS 40/86 Advisors' motion to quash. [JAMS Docket No. 1.]

So ordered.